IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. __1:20-cv-02974__

DEBRA GRUBBS,

   Plaintiff,

v.

MIDLAND CREDIT MANAGEMENT, INC.,

   Defendant.

## COMPLAINT

**NOW COMES** Debra Grubbs ("Plaintiff"), by and through the undersigned attorney, complaining of Midland Credit Management, Inc. ("Defendant") as follows:

### NATURE OF THE ACTION

1.    Plaintiff brings this action seeking redress for violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692, and violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227.

2.    Subject matter jurisdiction is conferred upon this Court by the FDCPA, TCPA and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in the District of Colorado, and Defendant conducts business and maintains significant business contacts in the District of Colorado.

### PARTIES

4.    Plaintiff is a natural person over 18-years-of-age.

5.    Defendant is a debt collection agency organized under the laws of the state of

Kansas with its principal place of business located at 350 Camino de la Reina, Suite 300, San Diego, California 92108. Defendant acted through its agents, employees, officers, members, directors, vendors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

6. Prior to 2016, Plaintiff obtained a line of credit with Synchrony Bank ("subject debt").

7. Subsequently, Plaintiff fell into immense financial hardship, Plaintiff fell behind on payments toward the subject debt and Defendant acquired the right to collect on the subject debt after Plaintiff was in default.

8. Subsequently thereafter, Plaintiff started to receive collection phone calls from Defendant to her cellular phone number (405) XXX-0494, attempting to collect the subject debt.

9. At all times relevant, Plaintiff was the sole subscriber, owner, possessor, and operator of her cellular telephone number ending in 0494. Plaintiff is and has always been financially responsible for this telephone and its services.

10. Soon after the calls began, Plaintiff answered a call from Defendant and told Defendant that she could not make a payment on this debt and requested the calls cease.

11. Failing to acquiesce to Plaintiff's demand to cease calling, Defendant continued to call Plaintiff's cellular phone, with multiple calls taking place in one day and calls taking place on back-to-back days.

12. Defendant has also placed multiple calls to Plaintiff's cellular phone using Caller ID spoofing, which deliberately falsifies the information transmitted to Plaintiff's Caller ID

2

display to disguise the identity of the caller.[1]

13. Upon information and belief, Midland spoofed its caller ID in order to trick Plaintiff into answering its calls and willfully attempt to collect the subject debt from Plaintiff.

14. Frustrated with Defendant's actions, Plaintiff answered several calls and requested that the phone calls cease.

15. Failing to acquiesce to Plaintiff's demands that it stop calling her cellular phone, Defendant continued to call Plaintiff without her consent numerous times between 2016 and the present day.

16. In the calls that Plaintiff did answer, Plaintiff was greeted by a noticeable period of "dead air" while Defendant's automated telephone system attempted to connect Plaintiff to a live agent.

17. Specifically, there would be an approximate 3 second pause between the time Plaintiff said "hello," and the time that a live agent introduced them self as a representative of Defendant.

18. Moreover, Plaintiff also hears what sounds to be call center noise in the background of each of Defendant's calls.

19. Upon information and belief, Defendant placed its calls to Plaintiff's cellular telephone using an automated telephone dialing system ("ATDS"), a telephone dialing system that is commonly used in the debt collection industry to collect defaulted debts owed to others.

20. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling with such frequency as can be reasonably expected to harass.

---

[1] In order to curtail caller ID spoofing, Congress enacted the Truth in Caller ID Act of 2009. Under the act, it is illegal "to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value...." Forfeiture penalties or criminal fines of up to $10,000 per violation (not to exceed $1,000,000) could be imposed.

21. Moreover, in early 2020, Plaintiff set up a payment plan with Defendant, allowing them to withdraw $50 every month.

22. After withdrawing $50 for several months, Midland withdrew $50.41 without Plaintiff's authorization.

23. Furthermore, in an attempt to collect the subject debt, Defend mailed a collection letter to Plaintiff ("collection letter").

24. In violation of Section 1692f(8) of the FDCPA, Defendant's collection letter was mailed to Plaintiff inside an envelope that was marked with the words "Time Sensitive Document."

25. There was nothing "time sensitive" about the contents of Defendant's enclosed letter.

26. Upon information and belief, Defendant has conducted research that demonstrates that unsophisticated and least sophisticated consumers are more likely to open collection letters sent in envelopes marked with the words "Time Sensitive Document" than plain envelopes that do not contain the quoted words.

27. Reading "Time Sensitive Document" on the envelope caused Plaintiff to become anxious, stressed, and worried about the contents of the letter.

28. Plaintiff's sense of stress, anxiety and worry intensified *after* she read the collection letter because she could not understand why the letter was designated as "time sensitive."

29. Plaintiff contacted the undersigned's law firm to understand why Defendant used the words "Time Sensitive Document" on the envelope in question.

30. Plaintiff suffered real and concrete harm because Defendant communicated with

4

her in a manner prohibited by the FDCPA.

### DAMAGES

31. Defendant's wanton and malicious conduct has severely impacted Plaintiff's daily life and general well-being.

32. Plaintiff has expended time and incurred costs consulting with her attorney as a result of Defendant's unfair, deceptive, and misleading actions.

33. Plaintiff was unduly inconvenienced and harassed by Defendant's unlawful attempts to collect the subject debt.

34. Defendant's phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity, wasting Plaintiff's time, increased risk of personal injury resulting from the distraction caused by the phone calls, aggravation that accompanies unsolicited phone calls, harassment, emotional distress, anxiety, loss of concentration, diminished value and utility of her telephone equipment and telephone subscription services, the wear and tear caused to her cellular telephone, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge her cellular telephone as a result of increased usage of her telephone services.

### COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

35. Plaintiff restates and realleges paragraphs 1 through 34 as though fully set forth herein.

36. Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

37. Defendant is a "debt collector" as defined by §1692a(6) because its primary business is the collection of delinquent debts and it regularly collects debts and uses the mail

and/or the telephones to collect delinquent accounts allegedly owed to a third party.

38. Moreover, Defendant is a "debt collector" because it acquired rights to the subject debt after it was in default. 15 U.S.C. §1692a(6).

39. The debt which Defendant is attempting to collect upon is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

40. Defendant used the phone to attempt to collect the subject debt and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

41. Defendant's communications to Plaintiff were made in connection with the collection of the subject debt.

42. Defendant violated 15 U.S.C. §§1692c(a)(1), d, d(5), e, e(10), f and f(8) through its unlawful debt collection practices.

### a. Violations of FDCPA § 1692c

43. Defendant violated §1692c(a)(1) when it continuously called Plaintiff after being notified to stop. This repeated behavior of continuously and systematically calling Plaintiff's cellular phone over and over after she demanded that it cease contacting her was harassing and abusive. Even after being told to stop contacting her, Defendant continued its onslaught of phone calls with the specific goal of oppressing and abusing Plaintiff into making a payment on the subject debt.

44. Furthermore, the large volume of calls shows that Defendant willfully ignored Plaintiff's pleas with the goal of annoying and harassing her into submission.

45. Defendant was notified by Plaintiff that its calls were not welcomed. As such, Defendant knew that its conduct was inconvenient, unwanted, and distressing to her.

### b. Violations of FDCPA § 1692d

46. Defendant violated §1692d by engaging in abusive, harassing, and oppressive conduct by relentlessly calling Plaintiff's cellular phone seeking payment on the subject debt. Defendant routinely calls Plaintiff multiple times in one day and on back-to-back days despite Plaintiff's requests that the phone calls cease.

47. Defendant violated §1692d(5) by causing Plaintiff's cellular phone to ring repeatedly and continuously in an attempt to engage Plaintiff in conversations regarding the collection of the subject debt with the intent to annoy, abuse, or harass Plaintiff. Furthermore, Defendant continued to place these calls after Plaintiff informed Defendant its calls were no longer welcome. Specifically, Defendant placed or caused to be placed numerous harassing phone calls to Plaintiff's cellular telephone from 2016 through the present day, with multiple calls taking place in one day and calls taking place on back-to-back days.

### c. Violations of FDCPA § 1692e

48. Defendant violated §1692e and e(10) when it used false, deceptive, and misleading means to collect and/or attempt to collect the subject debt. Defendant repeatedly contacted Plaintiff by way of caller ID spoofing seeking to collect upon the subject debt. Defendant deliberately employed Caller ID spoofing when calling Plaintiff to disguise its identity attempting to willfully dragoon Plaintiff into answering her cellular phone to make a payment. Through its conduct, Defendant misleadingly represented to Plaintiff that it had the legal ability to contact her when it did not have prior consent to do so in the first place.

49. Moreover, Defendant violated §1692e when it withdrew an unauthorized amount from Plaintiff's bank account.

### d. Violations of FDCPA § 1692f

7

50. Midland violated §1692f when it unfairly and unconscionably attempted to collect on the subject debt by use of illegal methods such as Caller ID spoofing. By placing voluminous phone calls disguising and manipulating its identity, Defendant not only violated the FDCPA herein but also violated the Truth in Caller ID Act of 2009 with its unfair and unconscionable behavior. These means employed by Defendant only served to confuse and trick Plaintiff.

51. In addition, section 1692f(8) prohibits a debt collector from:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

52. Section 1692f(8) contains no exceptions; any extraneous text on the envelope or on the outside of a self-mailer violates 15 U.S.C. § 1692f(8).

53. The use of the phrase "Time Sensitive Document" on the envelope sent to Plaintiff in relation to the subject debt violated Section 1692f(8) of the FDCPA as a matter of law because Section 1692f(8) prohibits a debt collector from using any language, other than the debt collector's address, on any envelope when communicating with a consumer.

54. Defendant's use of the words "Time Sensitive Document" in relation the subject debt violated Section 1692f(8) of the FDCPA because these words intended to create, and do create, a false sense of urgency to least sophisticated consumers, like Plaintiff.

55. Upon information and belief, Defendant systematically attempts to collect debts through harassing conduct and has no procedures in place to assure compliance with the FDCPA.

56. As stated above, Plaintiff was severely harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff, DEBRA GRUBBS respectfully requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
c. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and
d. Award any other relief as the Honorable Court deems just and proper.

### COUNT II – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

57. Plaintiff restates and realleges paragraphs 1 through 56 as though fully set forth herein.

58. Defendant placed or caused to be placed non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") without her prior consent in violation of 47 U.S.C. §227(b)(1)(A)(iii).

59. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

60. Upon information and belief, based on the lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used an automated dialing system to place calls to Plaintiff's cellular telephone.

61. Upon information and belief, the ATDS employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

62. Upon information and belief, Defendant's phone system stores telephone numbers

to be called, using a random or sequential number generator, which it used to call Plaintiff on her cellular phone.

63. The fact that Defendant's phone system continued to place calls after Defendant was aware that Plaintiff did not wish to receive further calls clearly evinces the fact that Defendant's phone system stored Plaintiff's phone number and continued to randomly or sequentially auto-dial Plaintiff's cellular phone number without her consent.

64. There would be no reason for Defendant to continue to contact Plaintiff, especially after having been notified to cease all telephone communications. Yet, Defendant's ATDS continued to keep Plaintiff's phone number stored, causing its system to randomly or sequentially dial the number dozens of times thereafter.

65. Any prior consent, if any, was revoked by Plaintiff's verbal revocations.

66. Defendant violated the TCPA by placing numerous phone calls to Plaintiff's cellular telephone from 2016 through the present day, using an ATDS without her prior consent.

67. As pled above, Plaintiff was severely harmed by Defendant's collection calls to her cellular phone.

68. Upon information and belief, Defendant has no system in place to document and archive whether it has consent to contact consumers on their cellular phones.

69. Upon information and belief, Defendant knew its collection practices were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

70. Upon information and belief, Defendant's phone system stores telephone numbers to be called, using a random or sequential number generator, which it used to call Plaintiff on her cellular phone.

71. The calls placed by Defendant to Plaintiff were regarding business activities and

not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

72.     Defendant, through its agents, vendors, representatives, subsidiaries, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

73.     Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff, DEBRA GRUBBS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declare Defendant's phone calls to Plaintiff to be violations of the TCPA;
b. Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C);
c. Enjoining Defendant from further communicating with Plaintiff; and
d. Awarding any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: October 2, 2020                              Respectfully Submitted,

/s/ Alexander J. Taylor
/s/ Marwan R. Daher
/s/ Omar T. Sulaiman
Alexander J. Taylor, Esq.
Marwan R. Daher, Esq.
Omar T. Sulaiman, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com
mdaher@sulaimanlaw.com
osulaiman@sulaimanlaw.com